COLLINS et al., Commissioners of Highways, v. AMSTERDAM
ST. R. CO. et al.

(Supreme Court, Appellate Division, Third Department.  November 12, 1902.)

1. STREET RAILROADS—CONSTRUCTION—CONSENT—PARTIAL COMPLIANCE.
Where a railroad company proceeded under the Railroad Law, §§ 91, 92, to obtain the consent of the commissioners of highways of a town to construct its track over and along about five miles of a certain highway, and filed the written consent of the owners of more than two-thirds of

the value of the property along the proposed route, the company could not abandon all but about 3,100 feet of the route, and construct their track for only that distance on such highway, by virtue of the consents obtained.

Appeal from special term, Montgomery county.

Proceedings by Taylor C. Collins and others, as commissioners of highways of the town of Amsterdam, against the Amsterdam Street Railroad Company and others, to enjoin obstruction of a highway. From an order vacating an order granting injunction, plaintiffs appeal. Reversed.

Argued before PARKER, P. J., and KELLOGG, SMITH, and CHASE, JJ.

White & Ferguson (Edward P. White, of counsel), for appellants.
Nisbet & Hanson (C. S. Nisbet, of counsel), for respondents.

CHASE, J. The Amsterdam Street Railroad Company is a domestic street surface railroad corporation, operating a railroad in the city of Amsterdam, and engaged in extending its railroad easterly and westerly from said city. On the 24th day of July, 1902, said company, by its contractors and employés, entered upon a certain highway of the town of Amsterdam, known as the "Mohawk Turnpike," and tore up, obstructed, and barricaded about 3,100 feet of the same, and caused persons using said highway to go around said part so barricaded, on private lands owned by said company adjoining the same on the north. An effort was made by the plaintiffs to stop said company and its contractors and employés from so obstructing said highway, but the work was continued, and this action was brought to perpetually restrain and enjoin the defendants from obstructing or interfering with said highway, or from erecting or maintaining any obstruction or barriers across the same, or from removing the soil thereof, or appropriating the same for the use of a street railroad, or in any manner preventing or hindering the use thereof by the public as a highway; and a temporary injunction against the defendants was obtained ex parte, with an order to show cause why the same should not be made permanent. At a special term all parties were heard, and it then appeared that on the 20th day of July, 1901, the plaintiffs, pursuant to sections 91 and 92 of the railroad law, duly executed and delivered to the said railroad company a consent "to extend its railroad in, through, over, upon, and along the following described highways, viz.: Commencing at a point in the Mohawk turnpike where the same is intersected by the easterly boundary line of the city of Amsterdam; thence running, in an easterly direction in, through, over, along, and upon said Mohawk turnpike to a point where the same is intersected by the boundary line between the counties of Montgomery and Schenectady; and to construct, operate, and maintain in said highway a street surface single-track railroad, with the necessary switches, turnouts, poles, wires, and appliances, to be operated with electricity as a motive power." The highway so described in said consent is about five miles in length. The said consent was given upon the following, among other, conditions:

"The company agrees to extend and widen all highway bridges which it crosses, in accordance with the requirements of the commissioners of highways." "The company agrees that wherever it occupies the traveled way in said highway it will construct and build a traveled way, of at least the same width as the portion occupied and used by it, according to the directions of said commissioners. The company agrees to extend and widen all highway bridges which it crosses in accordance with the requirements of the commissioners of highways." "Also that, wherever the grade of the company's roadbed shall be higher or lower than the grade of the traveled portion of the highway, the company shall raise or lower the grade of the highway to conform to the grade of the railroad as nearly as practicable, and so that the traveled way shall not be more than two feet above the tops of the rails at any point, and the company shall restore the highway to as good condition as at present, and leave all approaches thereto heretofore existing in a safe and passable condition, and wherever said railroad shall be depressed below the roadway said roadway shall also be cut down level with said railroad." "This consent is granted upon the further condition that the railroad herein described shall be completed and in operation on or before December 1, 1902."

On the 26th day of September, 1901, the railroad company filed in the office of the clerk of the county of Montgomery certain written consents to the building of said railroad in front of their respective properties, by the owners of property along the Mohawk turnpike, fronting on said highway, "from the easterly boundary line of the city of Amsterdam to the easterly boundary line of the town of Amsterdam," and annexed to said consents is an affidavit of an assessor of the town of Amsterdam showing that the assessed value of the property of the persons so executing said consents is more than two-thirds of the assessed value of all the property bounded on said proposed extension of said railroad. The railroad company bases its right to proceed with its work on said consent of the plaintiffs and of said adjoining property owners.

It also affirmatively appeared that since the execution of said consent by the plaintiffs, and the filing of said consents by the property owners, the railroad company has changed the route of its easterly extension, and that by its route as now adopted "the only portion of said turnpike that this defendant is determined to use and occupy pursuant to said franchise is the portion described in the complaint in this action, to wit, a distance of 3,100 feet." The route as now adopted for the extension of said railroad for that part of the five miles easterly of the 3,100 feet so above described is through private lands, and the same has been partially graded. It further affirmatively appeared that the railroad company does not intend to build a railroad over the five miles of highway for which it obtained consents of the local authorities and of the property owners, and the work now in progress is not in fact being done under such consents and franchise. Whether the property owners along that part of the highway that the railroad company intend to occupy, or any of them, have consented to the building of a railroad on said highway, does not appear; neither does it appear whether that part of the highway actually being taken by the railroad company is such as not to require any expensive grading, or whether the remainder of said five miles is such that the grading would require a large expenditure by the railroad company, and result in some value to the town. It is not a question of damages or as to which route is the better one for

the town of Amsterdam, but whether the company has the necessary consents to do what it is now doing. Without the consents required by statute, the railroad company is a trespasser. The consent of the local authorities is to the building of a street railroad over the entire five miles, and for the completion of the same on or before the 1st day of December, 1902. The railroad company cannot take a part and reject the balance. In re Metropolitan Transit Co., 111 N. Y. 588, 19 N. E. 645; Goelet v. Transit Co., 48 Hun, 520, 1 N. Y. Supp. 74; In re Buffalo Traction Co., 25 App. Div. 447, 49 N. Y. Supp. 1052; Railway Co. v. Welch, 1 App. Div. 140, 37 N. Y. Supp. 996.

The acceptance of the consents on the part of the railroad company placed upon it certain obligations. Whether the route was changed to avoid such obligations we are unable to say. The work that they are now doing is not done under such consents, nor in substantial compliance with the same, and the injunction should have been continued pendente lite.

Order reversed, with $10 costs and disbursements. All concur.